**UNITED STATES of America**

v.

**YUNG SOO YOO, Appellant.**

**No. 87–1262.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 7, 1987.

Decided Nov. 20, 1987.

Peter F. Schenck (Argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Michael R. Lazerwitz, Asst. U.S. Atty., Acting Chief of Appeals, Linda Dale Hoffa (Argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before WEIS and STAPLETON, Circuit Judges and DIAMOND, District Judge.*

DIAMOND, District Judge.

■ Appellant took this appeal following his conviction of violating 18 U.S.C. § 1014, which makes it unlawful for one knowingly to make false statements to a bank the deposits of which are insured by the Federal Deposit Insurance Corporation ("FDIC") in order to influence the action of that bank "upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan...." The sole issue presented is whether the agreement of a federally insured bank to make payments as a drawee bank in accordance with the terms of an international letter of credit is a commitment within the meaning 18 U.S.C. § 1014. We hold that it is and affirm.

*Background*

This case arises out of a contract between James Martin Coal Company ("JMCC"), of which the appellant, Yung Soo Yoo ("Yoo") was president, and the Office of Supply of the Republic of Korea ("OSROK"), under which JMCC agreed to sell coal to the Korean government. OSROK arranged to pay for the coal through an international letter of credit which it obtained from the Hanil Bank of Seoul, Korea ("Hanil"). The Girard Bank of Philadelphia, Pennsylvania, ("Girard") a federally insured bank, contracted with Hanil to act as the advising and drawee bank under the letter. In that role, Girard agreed to make payments to JMCC upon its presentation to Girard of documents indicating that JMCC had made shipments of coal meeting contract specifications. Hanil established an account with Girard to cover those payments.

In 1982, JMCC made three shipments of coal under its contract with OSROK. Although these shipments did not meet contract specifications, Yoo obtained payments from Girard by presenting documents to it which appellant knew falsely indicated that the shipments in fact conformed to the contract. As a result of the foregoing, appellant was convicted of violating 18 U.S.C. § 1014 by making false statements to a federally insured bank in order to influence its action on a commitment.

---

* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

## Discussion

At trial, appellant admitted that he knowingly made false statements to Girard in order to obtain payments from it under the letter of credit. Nevertheless, he argued that this did not violate § 1014 because Girard's agreement to make those payments did not constitute a commitment within the meaning of the statute. Specifically, Yoo contended that since § 1014 was designed to protect the funds of federally insured banks the agreements of those banks to make monetary payments became commitments under § 1014 only when those agreements exposed the bank to a loss of its funds. Appellant reasoned that since the payments made by Girard to JMCC were charged to the deposits in the Hanil account and, for reasons which we need not set forth, that Girard was not liable to indemnify Hanil or OSROK, that Girard's funds never were at risk and, therefore, its contractual obligation to make payments under the letter of credit was not a commitment under § 1014.

■ The appellant's argument lacks merit for several reasons. First, it is flawed since it is based on the invalid premise that § 1014 was designed to discourage only those false statements which may adversely affect the funds of federally insured banks and not those which may affect just their deposits.[1] The premise is invalid because it flies in the face of the statute which prohibits the making of false statements to "any bank the *deposits* of which are insured by the Federal Deposit Insurance Corporation...." 18 U.S.C. § 1014 (emphasis supplied). It is fair to infer from that language that Congress intended by this statute to promote the financial stability and integrity of federally insured banks generally, which certainly includes the intent to prohibit those false statements the purpose or effect of which is to influence a bank to disburse its insured deposits. Therefore, we must reject appellant's contention that under the circumstances of this case the agreement of a federally insured bank to disburse funds from the account of one of its depositors was not a commitment under § 1014.[2]

Appellant's position is unpersuasive for the additional reason that it offers no rational basis for this court to ignore the plain meaning of the word "commitment." *Black's Law Dictionary* and *Webster's New Collegiate Dictionary* both define "commitment" as an "agreement or pledge to do something." *Black's Law Dictionary* 248 (5th ed. 1979); *Webster's New Collegiate Dictionary* 226 (1981). In the instant case, Girard contracted to make monetary payments to JMCC upon the presentation of certain documents. This certainly was an "agreement or pledge to do something" and a commitment in the ordinary sense of that word. *See United States v. Tucker,* 773 F.2d 136, 139 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3338, 92 L.Ed.2d 742, *reh'g denied,* —— U.S. ——, 107 S.Ct. 23, 92 L.Ed.2d 774 (1986).

Although "commitment" appears to be a straightforward and unambiguous term standing alone or in the context of § 1014, appellant, nevertheless, urges that we look to the legislative history of the statute as the Supreme Court did in *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088,

---

1. Although appellant does not state specifically what he means by the term "bank's funds," in his brief he uses such expressions as the "bank's money," and its "own funds," which indicate that he intends the term to mean those funds in which the bank has a property interest as distinguished from funds deposited in the insured bank by its customers. Indeed, his argument is based on this distinction.

2. Yoo's additional argument that § 1014 does not apply here because in this case there was no risk of loss to any federally insured bank, disregards established precedent. Damage or the risk of damage to an insured bank is not an element of § 1014. *Kay v. United States,* 303

U.S. 1, 5–6, 58 S.Ct. 468, 470–471, 82 L.Ed. 607 (1938); *United States v. Goberman,* 458 F.2d 226, 229 (3d Cir.1972). All that "[i]t requires [is] that all statements supplied to lending institutions ..., which have the capacity to influence them, be accurate or at least not knowingly false [citations omitted]...." *Goberman,* 458 F.2d at 229. Even if we assume that protecting banks from loss was a primary purpose of the statute, the fact remains that the language employed therein by Congress simply does not make loss or the risk of loss an element of the offense. *See Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982).

73 L.Ed.2d 767 (1982), which he says will convince us that a bank only can make a commitment within the meaning of § 1014 when the bank's own funds are at risk.

In *Williams,* the question was whether the bad checks used in a check-kiting scheme contained express or implied false statements. The Court held that check-kiting was not proscribed by § 1014 because "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' " 458 U.S. at 284, 102 S.Ct. at 3091. The court then reviewed the legislative history to demonstrate that there was nothing therein which suggested that Congress intended to reach check-kiting in § 1014. *Id.* at 287–290, 102 S.Ct. at 3093–3095.

In the case before us, the question of whether a false statement was made is not at issue. As we stated earlier, appellant admitted at trial that he knowingly made false statements to Girard for the purpose of obtaining payments under the letter of credit. *Williams* does not address, and simply is no help in resolving, the issue of whether the obligation of a federally insured bank under a letter of credit to disburse the funds of a depositor is a § 1014 commitment. *See Tucker,* 773 F.2d at 139. Finally, there is nothing in the legislative history set forth in *Williams* which remotely suggests that a § 1014 commitment was intended to be limited to an insured bank's own funds. Thus, this court has no justification for refusing to give the word "commitment" its plain meaning and effect.

Accordingly, we conclude that the obligation of Girard to make payments pursuant to the letter of credit issued by Hanil was a § 1014 commitment. By so holding, we join the only other appellate court to have addressed this issue—the United States Court of Appeals for the Seventh Circuit—which held that a confirming bank's obligation to make payments under a letter of credit was a commitment within the scope of § 1014. *Tucker,* 773 F.2d at 136.

Appellant's conviction will be affirmed.