UNITED STATES of America,
Plaintiff–Appellant,

v.

Jamie John HAGBERG, Defendant–
Appellee.

No. 99–30112.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2000

Decided March 22, 2000

Ethan G. Shenkman, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the plaintiff-appellant.

Mark S. Werner, Assistant Federal Defender, Federal Defenders of Montana, Billings, Montana, for the defendant-appellee.

Before: TROTT, KLEINFELD, and SILVERMAN, Circuit Judges.

TROTT, Circuit Judge:

The United States appeals the district court's dismissal of an indictment charging Jamie John Hagberg ("Hagberg") with "knowingly dispos[ing] of domestic septage on a public contact site" in violation of 33 U.S.C. §§ 1345(e) and 1319(c)(2). The district court dismissed the indictment based on its conclusion that the substance Hagberg allegedly dumped was not "sewage sludge," as defined by 40 C.F.R. Part 503. The United States argues that the district court misapplied the regulatory definitions relevant to the actions charged in the indictment, and thus erred in dismissing the indictment. We have jurisdiction pursuant to 18 U.S.C. § 3731 and REVERSE and REMAND the case to the district court for further proceedings consistent with this Opinion.

## BACKGROUND

On September 12, 1997, Hagberg pumped sewage material from the septic tank of the Cozy Corner Bar in Lavina, Montana, into his H & H Septic and Drain Company pump truck. Later that evening, Hagberg allegedly discharged the sewage along a 1.6 mile stretch of road. Hagberg was subsequently indicted for "knowingly dispos[ing] of domestic septage on a public contact site ... in violation of 33 U.S.C. § 1345(e) and 1319(c)(2)." Subsection 1345(e) makes it "unlawful for any person to dispose of sludge from a publicly owned treatment works or any other treatment works treating domestic sewage for any use for which regulations have been established pursuant to subsection (d) of this section, except in accordance with such regulations." Clean Water Act of 1977 § 405(e), 33 U.S.C. § 1345(e) (Supp. 1999). Subsection 1319(c)(2) states that "[a]ny person who ... knowingly violates section ... 1345 of this title ... shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both." 33 U.S.C. § 1319(c)(2) (Supp.1999).

In his pre-trial motion to dismiss the indictment, Hagberg argued that the Cozy Corner's septic tank was not a "publicly owned treatment works" or "any other treatment works treating domestic sewage," as required for criminal liability under subsection 1345(e). The district court dismissed the indictment after concluding that the material pumped from the Cozy Corner's septic tank was not "sewage sludge" under the statutory and regulatory framework at issue. The court reached this conclusion for three separate reasons.

First, the district court reasoned that the dumped substance was not generated during any kind of "treatment" as envisioned by the regulations promulgated pursuant to subsection 1345(d). Second, the court concluded that the septic tank at the Cozy Corner Bar was not a "treatment works" as contemplated by the regulations. Finally, the court determined that "Part 503 of the Code of Federal Regulations cannot reasonably be construed to govern the internal processes of domestic septic tanks."

The United States appeals the district court's dismissal of the indictment, arguing that the district court misread and misinterpreted the statutory and regulatory framework governing Hagberg's actions. This is a case of first impression.

## DISCUSSION

■ The district court's decision to dismiss the indictment based on its interpretation of a federal statute is reviewed de novo. *See United States v. Fitzgerald,* 147 F.3d 1101, 1102 (9th Cir.1998). The construction or interpretation of a statute is reviewed de novo, *United States v. Frega,* 179 F.3d 793, 802 n. 6 (9th Cir.1999), as is the district court's interpretation of the federal regulations at issue. *See United States v. Ani,* 138 F.3d 390, 391 (9th Cir. 1998). In this appeal, we review the district court's legal conclusion that the material Hagberg allegedly discharged was not "sewage sludge."

In order to understand the charge with which Hagberg is faced, one must analyze the section 1345 framework as a whole. Section 1345 of Title 33 of the United States Code is titled "Disposal or use of sewage sludge." 33 U.S.C. § 1345 (Supp. 1999). The substantive provisions of that section establish two separate, but related, means by which the Environmental Protection Agency ("EPA") oversees the disposal or use of sewage sludge. First, under subsections 1345(a), (b), and (f), Congress set up a permit system for the EPA to administer. A disposal permit issued by the EPA is required "where the disposal of sewage sludge resulting from the operation of a treatment works as defined in [33 U.S.C. § 1292] ... would result in any pollutant from such sewage sludge entering the navigable waters...." *Id.* § 1345(a) (1986). Second, under subsection 1345(d), Congress requires the EPA to promulgate "regulations providing guidelines for the disposal of sludge and the utilization of sludge for various purposes." *Id.* § 1345(d) (Supp.1999). The EPA has promulgated such sludge regulations in 40 C.F.R. Part 503 ("Standards for the Use or Disposal of Sewage Sludge"). Part 503 "establishes standards, which consist of general requirements, pollutant limits, management practices, and operational standards, for the final use or disposal of sewage sludge generated during the treatment of domestic sewage in a treatment works." 40 C.F.R. § 503.1(a)(1) (1999).

■ Permits issued under the subsections 1345(a), (b), and (f) framework must incorporate the regulatory standards established pursuant to subsection 1345(d). *See* 33 U.S.C. § 1345(f)(1) (Supp.1999). However, the sludge regulatory standards may be enforced regardless of whether a permit has been or should have been issued. The EPA made this point clear when it issued 40 C.F.R. § 503.3, pursuant to its subsection 1345(d) regulatory power. In section 503.3, the EPA established that requirements set forth in Part 503 could

be "implemented through a permit" or directly enforced even in the absence of a permit. 40 C.F.R. § 503.3 (1999).

The "direct enforcement" provision, 40 C.F.R. § 503.3(b), reads as follows: "Direct enforceability. No person shall use or dispose of sewage sludge through any practice for which requirements are established in this part except in accordance with such requirements." 40 C.F.R. § 503.3(b) (1999). Furthermore, even where a "treatment works treating domestic sewage" is not required to acquire a permit under subsection 1345(f)(1), subsection 1345(f)(2) gives the EPA Administrator the additional power to "issue a permit to such treatment works solely to impose requirements for the use and disposal of sludge that implement the regulations established pursuant to subsection (d) of this section." 33 U.S.C. § 1345(f)(2) (Supp. 1999). Thus, *all* efforts at using or disposing of sewage sludge would have to meet the Part 503 standards, whether or not a permit was required under subsection 1345(a).

■ What is most important to understand from this dual enforcement mechanism is that some terms found in the subsection 1345(d) regulations are defined differently when used in the context of regulations specific to the permit scheme. Hagberg argues that the term "treatment works treating domestic sewage," as it is found in subsection 1345(e), should be defined by reference to 40 C.F.R. § 122.2. However, section 122.2 contains the permit scheme's regulatory definitions, and those definitions apply only to 40 C.F.R. Parts 122–124. *See id.* § 122.2 (1999) ("The following definitions apply to parts 122, 123, and 124."). The general definitions for subsection 1345(d)'s Part 503

regulations are located in 40 C.F.R. § 503.9. *See id.* § 503.9 (1999). When we focus upon this dichotomy in definitions, Hagberg's argument in support of dismissing the indictment fails.

The indictment does not charge Hagberg with violating a permit, nor does the government even allege that Hagberg was obligated to acquire a permit for his sewage removal activities. Thus, only the Part 503 regulations and its "direct enforcement" are implicated by Hagberg's conduct. Consequently, applicable terms are to be defined by reference to 40 C.F.R. § 503.9.

■ Hagberg is charged with violation of 33 U.S.C. § 1345(e), which requires that any "dispos[al] of [sewage][1] sludge from a publicly owned treatment works or any other treatment works treating domestic sewage" must be in accordance with the regulations promulgated pursuant to subsection 1345(d)—the Part 503 regulations. 33 U.S.C. § 1345(e) (Supp.1999). Although the issue has not been litigated and thus is not within the scope of this appeal, neither party disputes that if Hagberg's conduct can be characterized as disposing of sewage sludge from a treatment works treating domestic sewage, his alleged dumping of the sewage material would appear to be in contravention of the Part 503 regulations.[2]

■ We conclude that it is clear from the plain language of the Part 503 definitions of "sewage sludge" and "domestic septage" that Hagberg's alleged discharge of the sewage material from the Cozy Corner Bar is covered by subsection 1345(e). When we read 40 C.F.R. § 503.9(w), we find the answer right under our nose.

---

**1.** Section 1345 appears to treat the terms "sewage sludge" and "sludge" as equivalents, using both interchangeably, without any apparent consequential difference in meaning. Where subsection 1345(e) uses the term "sludge," we interpret it to mean "sewage sludge." This construction of the section is logical in that section 1345 is titled "Disposal or use of sewage sludge," subsection 1345(e)

is titled "Manner of sludge disposal," and neither the parties nor the context of the section argue for a contrary construction.

**2.** Whether or not Hagberg "knowingly" dumped the sewage, as charged by the indictment, is an entirely different matter.

Section 503.9(w) reads, "[s]ewage sludge is solid, semi-solid, or liquid residue generated during the treatment of domestic sewage in a treatment works. Sewage sludge includes, but is not limited to, domestic septage; scum or solids removed in primary, secondary, or advanced wastewater treatment processes; and a material derived from sewage sludge." 40 C.F.R. § 503.9(w) (1999). In turn, "[d]omestic septage is either liquid or solid material removed from a septic tank, cesspool, portable toilet, Type III marine sanitation device, or similar treatment works that receives only domestic sewage." Id. § 503.9(f) (1999). The parties do not dispute that the Cozy Corner Bar's septic tank received only "domestic sewage," which is defined as "waste and wastewater from humans or household operations that is discharged to or otherwise enters a treatment works." Id. § 503.9(g) (1999).

These regulatory definitions combine unequivocally to demonstrate that Hagberg's conduct is covered by subsection 1345(e). If "domestic septage" includes material removed from a septic tank receiving only domestic sewage, see id. § 503.9(f), and "domestic septage" is also a type of "sewage sludge," or "residue generated during the treatment of domestic sewage in a treatment works," id. § 503.9(w), then material removed from a septic tank receiving only domestic sewage must be sewage sludge "generated during the treatment of domestic sewage in a treatment works." In other words—specifically, those of subsection 1345(e)—material removed from a septic tank receiving only domestic sewage is necessarily "sludge from a ... treatment works treating domestic sewage." 33 U.S.C. § 1345(e). The district court erred in reasoning that the Cozy Corner septic tank is not a "treatment works" and is not engaged in "treatment." Similarly, the court erred in concluding that the gunk at issue in this case was not "sewage sludge."

Under these circumstances, once the government has shown that the material

Hagberg allegedly discharged came from a septic tank receiving only domestic sewage, it has automatically shown that the material came from a "treatment works treating domestic sewage." The definitions of "treatment" and "treatment works" at sections 503.9(z) and 503.9(aa), were they taken by themselves, might leave room for argument as to whether "treatment" of the kind specified in section 503.9(z) occurs inside a domestic septic tank. But taken in context with the other definitions, it is clear that a domestic septic tank is necessarily a "treatment works" for purposes of the "direct enforceability" regulation at section 503.3(b). This is so because the definition of "domestic septage" at section 503.9(f) says that it is material removed from "a septic tank, cesspool, portable toilet, Type III marine sanitation device, or similiar treatment works. ..." 40 C.F.R. § 503.9(f) (emphasis added). If a portable toilet is a "treatment works," then a fortiori so is a septic tank.

Hagberg is correct that the term "treatment works treating domestic sewage," as defined in 40 C.F.R. § 122.2, excludes "septic tanks or similar devices." Id. § 122.2. However, that definition relates only to the EPA's permit program under 33 U.S.C. § 1345(a), the "National Pollutant Discharge Elimination System," and is explicitly limited in its application to 40 C.F.R. Parts 122–124. See id. ("The following definitions apply to parts 122, 123, and 124."). In other words, it has nothing to do with this case.

The section 122.2 definition obviously is clearer than the definition we. have deduced from section 503.9. Section 122.2 defines the exact phrase—"treatment works treating domestic sewage"—found in subsection 1345(e), whereas through section 503.9, we have had to piece together a meaning. Yet, notwithstanding the EPA's awkward scheme of definitions, the explicit limitation of the section 122.2 definition makes it inapplicable to this case. Furthermore, the fact that we had to read

**574**

several section 503.9 definitions in conjunction with each other to reach the meaning of "[sewage] sludge from a ... treatment works treating domestic sewage" does not detract from the conclusion that the regulatory definition is plain on its face.

We note that our decision comports with the EPA's own reading of the requirements underlying section 1345. The EPA's decision to exclude septic tanks from the definition of "treatment works treating domestic sewage" under the permit program implements its belief that Congress did not intend that all private owners of septic tanks would be required to acquire a permit to operate the septic tanks. In adopting the Part 122 permit regulations, the EPA commented that it had

> excluded septic tanks and portable toilets from the permitting requirement because Congress indicated its intent that the section 405 technical standards apply only to septage treatment and processing, not generation. S.Rep. No. 99–50 on S. 1128 at 47 (1985). It follows that if the standards apply only to treatment, and not generation, it would serve no useful purpose to require permits for the 22 million homeowners with septic tanks or for portable toilets.

National Pollutant Discharge Elimination System Sewage Sludge Permit Regulations; State Sludge Management Program Requirements, 54 Fed.Reg. 18,716, 18,718 (1989). On the other hand, the decision to include septic tanks within the definition under the subsection 1345(d) regulations means that users and disposers of materials from privately-owned septic tanks— such as Hagberg—would still be obligated to comply with the subsection 1345(d) regulations regarding use and disposal. *See* Standards for the Use or Disposal of Sewage Sludge, 58 Fed.Reg. 9248, 9362 (1993) ("Domestic septage is considered sewage

sludge under today's rule; therefore, users and disposers of domestic septage must comply with the standards applicable to their use or disposal practices.").

While the legislative history underlying Parts 122 and 503 demonstrates that our decision is consistent with the EPA's own reading of section 1345, we cannot completely ignore one logical inconsistency in the EPA's reasoning. The EPA states that septic tank owners need not acquire permits because "Congress ... inten[ded] that the ... technical standards apply only to septage treatment and processing, not generation." 54 Fed.Reg. at 18,718. As discussed earlier, however, because the Part 503 definitions indicate that a septic tank produces "domestic septage," and domestic septage is a type of "sewage sludge," septic tanks necessarily are engaged in septage treatment for purposes of that Part.

■ How septic tanks can be said to "treat" under one set of provisions, but not another, is unclear.[3] Nevertheless, we can avoid this seeming inconsistency in the EPA's reasoning process through reliance on one of the basic tenets of statutory construction. Where a statute or regulation is plain on its face, such as the section 503.9 definitions, statements in legislative history do not sway our decision. *See Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir.1995) ("[T]he plain meaning of language in a regulation governs unless that meaning would lead to absurd results.") (citing *Dyer v. United States*, 832 F.2d 1062, 1066 (9th Cir.1987)).

■ We hold that disposers of sewage pumped from septic tanks receiving only domestic sewage are "dispos[ing] of [sewage] sludge from a ... treatment works treating domestic sewage," within the meaning of 33 U.S.C. § 1345(e) and the regulations promulgated pursuant to 33

**3.** When adopting Part 122, the EPA stated that it was excluding septic tanks from the definition of "treatment works treating domestic sewage" for purposes of the permit regulations despite its belief that septic tanks "arguably could be considered treatment works." 54 Fed.Reg. at 18,718.

U.S.C. § 1345(d). Thus, Hagberg's alleged actions are implicated by subsection 1345(e)'s prohibition on the disposal of sludge except in accordance with the subsection 1345(d) regulations. The district court improperly dismissed the indictment.

REVERSED and REMANDED for further proceedings consistent with this Opinion.