**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Allan BOREN, Defendant–Appellee.**

**No. 01–50083.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed Jan. 23, 2002.

Ronald L. Cheng, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellant.

Ronald Richards, Los Angeles, CA, for the defendant-appellee.

Before: PREGERSON, REINHARDT and SILVERMAN, Circuit Judges.

## OPINION

SILVERMAN, Circuit Judge.

The government appeals the district court's dismissal of two counts of an indictment alleging that Defendant Allan Boren made false statements to a federally insured bank in violation of 18 U.S.C. § 1014. The statements were allegedly made in connection with a request to stop payment of an official bank check. The district court ruled that the first superseding indictment did not state an offense because it did not allege an intent to influence a lending activity. Because the statute criminalizes false statements in connection with *any* bank "application" or "commitment," not just those relating to loans, we reverse.

## I. Facts

A federal grand jury indicted Boren on two counts of making false statements for the purpose of influencing an institution insured by the Federal Deposit Insurance Corporation, 18 U.S.C. § 1014, and one count of bank fraud, 18 U.S.C. § 1344. With the respect to Count One, bank fraud, the first superseding indictment alleged that Boren obtained an official bank check from Citibank in the amount of one million dollars. He "provide[d] the official bank check to the Hilton Casino" in Las Vegas, Nevada, "so that he could gamble at the casino." After losing money to the casino, Boren returned to Citibank and requested a stop payment on the official bank check by falsely claiming that the check had been lost or stolen.

With regard to Count Two, false statement to a financial institution in violation of 18 U.S.C. § 1014, the first superseding indictment alleged:

On or about December 1, 1997, in the Central District of California, defendant BOREN knowingly made a false statement to Citibank, for the purpose of attempting to stop payment on a $1 million official bank check, which he used for gambling at the Hilton Casino in Las Vegas, Nevada. Specifically, defendant BOREN telephoned a representative at the Porter Ranch, California branch of Citibank, and told the representative that he had misplaced the official bank check and that he had not signed it, knowing that the check had not been stolen, or lost, and that he had actually signed the check.

With respect to Count Three, a second count of false statement to a financial institution, the first superseding indictment alleged:

On or about December 3, 1997, in the Central District of California, defendant BOREN knowingly made a false statement to Citibank, for the purpose of attempting to stop payment on a $1 million official bank check, which he had used for gambling at the Hilton Casino in Las Vegas, Nevada. Specifically, defendant BOREN falsely told a representative at the Porter Ranch, California branch of Citibank that the official bank check had been stolen or not properly placed, and completed a written Stop Payment Request and Indemnity, knowing that the check had not been stolen or lost.

Pursuant to Fed.R.Crim.P. 12(b), Boren brought a motion to dismiss the indictment in its entirety for failure to state an offense. Boren admitted for the purposes of the motion that he had made false statements; however, he argued that the indictment was insufficient as a matter of law because it failed to allege that his false statements were intended to influence a loan or other extension of credit.

The district court conducted an evidentiary hearing "on the issue of whether funds were advanced, loaned, or committed by the bank in this case, and whether [the funds were] at risk." Each side presented the testimony of a banker regarding the nature of an official bank check and a stop payment request.

The district court denied the motion to dismiss the bank fraud count but granted Boren's motion to dismiss the false statement counts, reasoning that the indictment failed "to allege conduct by Defendant Boren which amounts to inducing Citibank to grant him an 'advance,' 'loan,' or 'commitment.'" The district court held that 18 U.S.C. § 1014 does "not apply to a case like this involving issuance of cashier's checks ... In the absence of clear congressional intent to have 'ordinary' retail activities such as issuances and stops of cashier's checks be a federal criminal matter, the Court declines to so find." The district court said that "even assuming the truth of the allegations in the indictment," no mention was made of any advance, loan, or commitment on the part of Citibank.

At the government's request, the court then dismissed without prejudice the bank fraud count against Boren, and the government appealed the district court's dismissal of the false statement counts.

## II. Jurisdiction and Standard of Review

■ This court has jurisdiction over the government's timely interlocutory appeal pursuant to 18 U.S.C. § 3731. *See United States v. Russell,* 804 F.2d 571, 573 (9th Cir.1986) (an appellate court has jurisdiction under § 3731 to hear a government's interlocutory appeal from the dismissal of a portion of the counts of an indictment). The district court's dismissal of an indictment based on its interpretation of a federal statute is reviewed de novo. *See United*

*States v. Hagberg,* 207 F.3d 569, 571 (9th Cir.2000).

## III. Analysis

### A. Motion to dismiss for failure to state an offense

 In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment. *See United States v. Jensen,* 93 F.3d 667, 669 (9th Cir.1996); *United States v. Caicedo,* 47 F.3d 370, 371 (9th Cir.1995); *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982); *United States v. Thordarson,* 646 F.2d 1323, 1337 n. 25 (9th Cir.1981). On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged. *See Jensen,* 93 F.3d at 669. The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing.

This is unlike pre-trial motions to dismiss premised on other grounds, such as that the indictment violates the defendant's right against double jeopardy, on which a court may take evidence and make factual determinations.[1] *See United States v. Covington,* 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969) (whether defendant faced risk of self-incrimination did not involve issues intertwined with the underlying offense).

 "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence ... The Court should not consider evidence not appearing on the face of the indictment." *Jensen,* 93 F.3d at 669(quoting *United States v. Marra,* 481 F.2d 1196, 1199–1200

(6th Cir.1973)); *see also United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) ("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."). The "unavailability of Rule 12 in determination of general issues of guilt or innocence ... helps ensure that the respective provinces of the judge and jury are respected...." *United States v. Nukida,* 8 F.3d 665, 670 (9th Cir.1993).

### B. 18 U.S.C. § 1014

#### 1. The statute is not limited to lending transactions.

 Boren contends that 18 U.S.C. § 1014 is limited to false statements in connection with lending transactions and does not extend to the scheme alleged in the indictment.

[2] 18 U.S.C. § 1014 states:

Whoever knowingly makes any false statement ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation ... upon *any application,* advance, discount, purchase, purchase agreement, repurchase agreement, *commitment,* or loan ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years....

(emphasis added).

 The statute's reach is not limited to false statements made with regard to loans, but extends to *any* application, commitment or other specified transaction. "We look first to the plain language of the statute, construing the provisions of the

---

1. Fed.R.Crim.P. 12(b) provides: "Any defense, objection, or request *which is capable of determination without trial* of the general

issue may be raised before trial by motion." (emphasis added).

entire law, including its object and policy, to ascertain the intent of Congress. Then, if the language of the statute is unclear, we look to its legislative history." *Alarcon v. Keller Indus., Inc.,* 27 F.3d 386, 389 (9th Cir.1994) (internal citations omitted).

The language of 18 U.S.C. § 1014 is "unambiguous and broad." *United States v. Wade,* 266 F.3d 574, 579(6th Cir.2001); *see also United States v. Krilich,* 159 F.3d 1020, 1028 (7th Cir.1998) ("The text of the statute is straightforward and broad."). We agree with the Sixth Circuit that "[n]owhere in the language of the statute has Congress stated that the statute applies only to applications seeking credit from one of the covered institutions." *Wade,* 266 F.3d at 579–80.

18 U.S.C. § 1014 covers "any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan." A reading of 18 U.S.C. § 1014 limiting its reach only to lending transactions would render meaningless the word "any" and the enumerated transactions, other than "loan," that follow it. *See Wade,* 266 F.3d at 580; *Krilich,* 159 F.3d at 1028. The interpretation urged by Boren is further belied by the long list of financial institutions listed in and protected by 18 U.S.C. § 1014, some of which do not even make loans.[2] *See Krilich,* 159 F.3d at 1028("the Office of Thrift Supervi-

sion and other listed bodies are just regulators").

In arguing that 18 U.S.C. § 1014 does not cover the conduct charged in the first superseding indictment, Boren relies primarily on *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). In *Williams,* the Court simply held that depositing a bad check does not constitute the making of a false statement for purposes of 18 U.S.C. § 1014 because, "technically speaking, a check is not a factual statement at all, and therefore cannot be characterized as 'true' or 'false.'" 458 U.S. at 284, 102 S.Ct. 3088. Unlike the situation in *Williams,* however, the first superceding indictment in this case clearly alleged that Boren had made false factual statements (i.e., that he had misplaced the official bank check and had not signed it). *Williams* did not purport to answer the question posed in this case— whether a false statement must relate to an extension of credit.

█ In sum, we join at least six of our sister circuits—the First, Third, Fourth, Sixth, Seventh, and Tenth—in holding that 18 U.S.C. § 1014 is not limited to lending transactions, and reject the minority rule to the contrary. *See United States v. Agne,* 214 F.3d 47, 54 (1st Cir.2000) (letter of credit is "commitment"); *United States v. Yoo,* 833 F.2d 488, 490 (3rd Cir.1987) (payments pursuant to international letter

---

2. 18 U.S.C. § 1014 protects "the Farm Credit Administration, Federal Crop Insurance Corporation or a company the Corporation reinsures, the Secretary of Agriculture acting through the Farmers Home Administration or successor agency, the Rural Development Administration or successor agency, any Farm Credit Bank, production credit association, agricultural credit association, bank for cooperatives, or any division, officer, or employee thereof, or of any regional agricultural credit corporation established pursuant to law, or a Federal land bank, A Federal land bank association, a Federal Reserve bank, a small busi-

ness investment company, a Federal credit union, an insured Stated-charted credit union, any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board, a branch or agency of a foreign bank ... or an organization operating under section 25 or section 25(a) of the Federal Reserve Act."

of credit are "commitment"); *United States v. Pinto,* 646 F.2d 833, 838 (3rd Cir.1981) (mistaken deposit is an "advance"); *United States v. Bonnette,* 781 F.2d 357, 365 (4th Cir.1986) (fraudulent sight drafts with title to car attached are "false statements"); *Wade,* 266 F.3d at 580 (checking account application is an "application"); *Krilich,* 159 F.3d at 1028–29 (18 U.S.C. § 1014 not limited to statements made to obtain loans or other extensions of credit); *United States v. Tucker,* 773 F.2d 136, 139 (7th Cir.1985) (letter of credit fits within "application," "advance," and "commitment."); *United States v. Stoddart,* 574 F.2d 1050, 1053 (10th Cir.1978) (false statement regarding a deposit intended to influence "commitment"); *but see United States v. Krown,* 675 F.2d 46, 51 (2d Cir. 1982) ("application" and "commitment" must relate to loan or other credit transaction); *United States v. Devoll,* 39 F.3d 575, 578–79 (5th Cir.1994) (18 U.S.C. § 1014 relates only to lending activities).

## 2. A stop payment request on a bank check is an "application" or "commitment."

■ This, then, leads us to the final question we must consider: Whether a false statement made to influence a bank to stop payment of a bank check relates to an "application," "commitment," or one of the other transactions enumerated in 18 U.S.C. § 1014. We hold that it does.

■ The bank is the drawer of a bank check or a cashier's check.[3] U.C.C. § 3–104(g)–(h). Unlike a personal check drawn by a depositor on his own account, bank checks and cashier's checks carry the promise of the bank itself. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* 390 (4th ed.1995); *see also United States v. Riley,* 550 F.2d 233, 235 (5th Cir.1977) ("The cashier's check is a commitment by the bank to deliver cash to the payee.").

When a customer requests a bank to stop payment of a bank check or a cashier's check, "the customer is asking the bank to break the bank's own ... contract" under Uniform Commercial Code § 3–414 or § 3–412—namely, its promise to a holder of the check that the instrument will be paid.[4] 2 White & Summers, *supra,* at 390. It follows that a statement made to induce a bank to dishonor a bank check seeks to influence the bank's "commitment" to a holder of the bank check.

Likewise, a stop payment request, whether made orally or in writing, is an "application" to the bank to dishonor the

---

3. A bank check, also called a teller's check, is a draft drawn by the bank on another bank. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* 390 (4th ed.1995); U.C.C. § 3–104(h). A cashier's check is a check on which the bank is both the drawer and the drawee. U.C.C. § 3–104(g). Section 3104 of the California Commercial Code uses the same definitions as the Uniform Commercial Code for cashier's checks and teller's checks.

4. Section 3–412 of the Uniform Commercial Code applies to cashier's checks and states: "The issuer of a note or cashier's check or other draft drawn on the drawer is obliged to pay the instrument (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder." Section 3–414 of the Uniform Commercial Code sets forth the obligation of the bank when it serves as drawer of a check, stating: "If an unaccepted draft is dishonored, the drawer is obliged to pay the draft (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder." Sections 3412 and 3414 of the California Commercial Code track exactly the language of sections 3–412 and 3–414 of the Uniform Commercial Code.

check when it is presented. Under Uniform Commercial Code § 4–403,[5] a customer does not have the right to stop payment of a bank check. Because a bank check is not drawn on the customer's account but rather on the bank's own account, the bank is not required to impair its credit or incur liability by refusing payment for the convenience of the customer. U.C.C. § 4–403 Official Comment 4. The best the customer can do is ask. A customer's request that a bank stop payment of a check drawn by the bank is an "application" which the bank has the right to accept or reject. A false statement made to influence a bank's action on such a request falls within the purview of 18 U.S.C. § 1014.

## Conclusion

Looking at only the four corners of the first superseding indictment, we hold that the factual allegations of Count Two and Three adequately state two respective violations of 18 U.S.C. § 1014, false statement to a financial institution. Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

**5.** Section 4403 of the California Commercial Code parallels section 4–403 of the Uniform Commercial Code.