NOT FOR PUBLICATION

FILED

APR 7 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   20-10297 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 2:13-cr-00439-KJD-VCF-4 |
| | 2:13-cr-00439-KJD-VCF |
| SEAN P. FINN, | |
| Defendant-Appellant. | MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted March 17, 2022
Las Vegas, Nevada

Before:  D.M. FISHER,** BENNETT, and KOH, Circuit Judges.

Sean Finn appeals his convictions for wire fraud, securities fraud, and

conspiracy, as well as the district court's forfeiture and restitution orders.  We have

jurisdiction under 28 U.S.C. §§ 1291 and 3742 and affirm.  Because the parties are

familiar with the facts, we do not recount them here, except as necessary to provide

---

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **        The Honorable D. Michael Fisher, United States Circuit Judge for the
U.S. Court of Appeals for the Third Circuit, sitting by designation.

context to our ruling.

Finn was a broker for the Swiss company Malom Group AG. Malom operated to defraud investors. Finn recruited victims to invest with Malom through false promises about Malom's legitimacy, its access to hundreds of millions of dollars and euros, and the likelihood of huge returns. Malom obtained more than $6 million from the scheme from sixteen individual investors, with Finn directly procuring about $3.8 million from the eight individual investors listed in the indictment. Finn took $830,000 for himself from the scheme.

1. Finn maintains that the government selectively prosecuted him because of his gender. "To establish a claim of selective prosecution, a defendant must show both discriminatory effect and discriminatory purpose." *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018). A defendant "must demonstrate that (1) other similarly situated individuals have not been prosecuted and (2) his prosecution was based on an impermissible motive." *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007). Because Finn "has no viable selective prosecution claim under any standard of review," this court need not determine whether to apply de novo or clear-error review. *United States v. Culliton*, 328 F.3d 1074, 1080 (9th Cir. 2003) (per curiam).

As to discriminatory effect, Finn argues that the government declined to prosecute three similarly situated women. But there was a material difference in

2

conduct between Finn and each of the three. One earned only $300,000 and cooperated; one participated in only one transaction with one victim; and one had a materially different role—processing escrow transactions.

Finn also admits he "has no direct evidence of discriminatory purpose" and instead points only to circumstantial evidence—that the government did not prosecute women who he says were similarly situated. This is insufficient. Finn fails to satisfy both prongs of the selective-prosecution test.

2. Finn claims the district court should have dismissed the securities fraud counts because the indictment inadequately alleged that the transactions involved securities. This court reviews pretrial challenges to indictments de novo. *United States v. Qazi*, 975 F.3d 989, 992 (9th Cir. 2020). An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged" and "the elements of the offense charged." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (citations omitted). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The indictment here easily suffices, listing the necessary elements of securities fraud in language much like this circuit's model jury instructions,

3

identifying the dates and victims for each charged investment contract, and sufficiently identifying an expectation of profits to be produced by the efforts of others.

3.      Finn claims the district court abused its discretion in admitting evidence of his flight to Canada.  This court reviews the district court's evidentiary rulings for an abuse of discretion.  *United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002).  "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself."  *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986).  "[F]light evidence is probative of a defendant's guilt if four inferences are justified: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999) (citation and internal quotation marks omitted).  Finn's abrupt move to Canada and the facts surrounding and following it support this chain of inferences and the district court's exercise of its discretion.

4.      Finn claims the government violated discovery rules when it produced his laptop's hard drive.  This court reviews the district court's discovery rulings for an abuse of discretion.  *United States v de Cruz*, 82 F.3d 856, 866 (9th Cir. 1996).  But as Finn acknowledges, the government produced the hard drive about *one year*

before trial. The hard drive failed before trial (Finn did not know exactly when), and Finn asked the government to produce a full copy of its contents the Saturday before the Monday trial. By Sunday morning, the government had produced copies of most of the hard drive's contents. Finn acknowledges the government "did everything they could to produce the copy of the hard drive they had made," but claims "the timing during trial and format of discs from the drive made it impossible to search and locate particular files." But Finn never identifies any discovery obligation the government failed to perform. And Finn neither lists any of the evidence that he would have used at trial had the hard drive never failed, nor explains how such evidence would have changed the result of the trial. And Finn did not provide this information to the district court. The district court did not abuse its discretion in rejecting Finn's argument.

5. Finn filed an eve of trial motion to continue trial, based on the hard drive's failure. "A district court has broad discretion to grant or deny a continuance," and "[i]ts decision will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Kloehn*, 620 F.3d 1122, 1126–27 (9th Cir. 2010) (citation and internal quotation marks omitted). He claims the district court abused its discretion in denying his motion. Finn never told the district court when the hard drive failed and acknowledged the government's extensive efforts to produce a copy just after being notified of the failure. The district court did not

5

abuse its discretion in finding that granting the continuance would have caused extreme inconvenience.  And the district court mitigated any prejudice by authorizing CJA funds to allow for additional review of the laptop's contents during trial.  The remaining relevant factors also support that the district court appropriately exercised its discretion.  *See United States v. Rivera-Guerrero*, 426 F.3d 1130, 1138–39 (9th Cir. 2005).  And, as noted, Finn has identified no prejudice.

6.     Finn challenges the district court's forfeiture order.  This court reviews the district court's interpretation of federal forfeiture law de novo and its factual findings for clear error.  *United States v. Alcaraz-Garcia*, 79 F.3d 769, 772 (9th Cir. 1996).  First, Finn claims the forfeited amount—$830,000—exceeds the supposed $490,498 he received from the scheme.  But the district court did not err in counting proceeds to Finn that came from victims of the scheme who did not testify and who were not listed in the indictment.  There was ample evidence that Finn received $830,000.

Finn also argues that *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), which considered a different criminal forfeiture statute, 21 U.S.C. § 853, forbids joint and several criminal forfeiture liability.  Whether or not the same limitation applies to the forfeiture statute here, 18 U.S.C. § 981(a)(1)(C), *Honeycutt* forbade joint and several liability only "for property that [a] co-conspirator derived from

6

the crime *but that the defendant himself did not acquire*." 137 S. Ct. at 1630

(emphasis added). Finn also claims that he did not have proper notice because the

indictment supposedly cited the wrong forfeiture statute. But the indictment cited

the correct criminal forfeiture provisions.[1]

Finn claims that he had a right to a jury determination of the forfeiture

amount. But this argument "is directly contradicted by binding Supreme Court

precedent." *United States v. Wilkes*, 744 F.3d 1101, 1109 (9th Cir. 2014); *see*

*Libretti v. United States*, 516 U.S. 29, 48–49 (1995) (holding that there is no Sixth

Amendment right to a jury verdict in a criminal forfeiture proceeding). Finn's

argument that the forfeiture order violates the Double Jeopardy Clause is also

foreclosed, as the two sanctions are distinct. "[F]orfeiture and restitution serve

different purposes or goals. Forfeiture is imposed as punishment for a crime;

---

[1] The indictment included two forfeiture allegations, one for the wire fraud counts and the other for the securities fraud counts. Both cite 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Finn argues that the government should have cited § 981(a)(1)(D), not § 981(a)(1)(C), because subsection (D) specifically mentions the wire fraud statute. But through a chain of citations, so does subsection (C). As the government explains, subsection (C) authorizes the civil forfeiture of property traceable to "any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Such "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." 18 U.S.C. § 1956(c)(7)(A). And § 1961(1) lists "any act which is indictable under . . . section 1343 (relating to wire fraud)" and "any offense involving . . . fraud in the sale of securities."

restitution makes the victim whole again." *United States v. Davis*, 706 F.3d 1081, 1083 (9th Cir. 2013) (citation omitted).

Finally, Finn argues that 18 U.S.C. § 981 does not authorize the entry of personal money judgments. The statute authorizes the forfeiture of "[a]ny property, real or personal, involved in" the offense. 18 U.S.C. § 981(a)(1)(A). Finn claims this language covers only the forfeiture of specific "property that exists" rather than "a personal judgment enforceable against money and property the government has not even shown to exist." But the other forfeiture statute cited in the indictment, 28 U.S.C. § 2461(c), authorizes forfeiture "pursuant to the Federal Rules of Criminal Procedure." And Rule 32.2 "makes clear that, at least where the proceeds of the criminal activity are money, the government may seek a money judgment as a form of criminal forfeiture." *United States v. Newman*, 659 F.3d 1235, 1242 (9th Cir. 2011), *abrogated on other grounds by Honeycutt*, 137 S. Ct. 1626. And this court has held that 21 U.S.C. § 853's authorization of the criminal forfeiture of "property" allows for money judgments. *United States v. Casey*, 444 F.3d 1071, 1075–76 (9th Cir. 2006) (citing Rule 32.2).

7. Finn challenges the $6.075 million restitution order. This court reviews the legality of a restitution order de novo, the amount of restitution for abuse of discretion, and the underlying factual findings for clear error. *United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008). Finn claims the district

8

court erred in holding him jointly and severally liable with his co-defendants; that the restitution amount should not have exceeded $5.65 million; that he had a right to have a jury determine the restitution amount; and that the imposition of both forfeiture and restitution violates the Double Jeopardy Clause. We have already rejected Finn's Double Jeopardy Clause argument.

Federal law authorizes joint and several restitution liability here.[2] And the district court did not abuse its discretion in imposing on Finn joint and several liability for the entire amount of the loss caused by the Malom scheme.[3] Finn

---

[2] The Mandatory Victims Restitution Act ("MVRA") applies to "offense[s] against property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). It generally requires district courts to order restitution to each victim in the full amount of the victim's losses, without consideration of the defendant's financial condition. *Id.* §§ 3663A(a)(1), 3664(f)(1)(A); *see United States v. Matsumaru*, 244 F.3d 1092, 1108 (9th Cir. 2001). The MVRA defines "victim" broadly as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). And when a district court "finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *Id.* § 3664(h).

[3] Finn was convicted of wire fraud, which requires proof of a "scheme or artifice to defraud," and the corresponding conspiracy. 18 U.S.C. §§ 371, 1343. That offense is one "for which restitution may be ordered for all persons directly harmed by the entire scheme. Restitution is thus not confined to harm caused by the particular offenses of which [the defendant] was convicted." *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002) (citation omitted).

played a major role in the scheme, and the district court appropriately put compensating the victims first.

Finn claims restitution is limited to $5.65 million because that amount was stipulated to and ordered in a co-defendant's case. He argues that principles of res judicata and issue preclusion prevent the government from "re-litigating" the issue here and seeking more from him than from his co-defendant. Finn appears to be referencing unilateral or non-mutual collateral estoppel, which "is a version of the doctrine that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003). "Although unilateral collateral estoppel exists in the civil arena, [courts] do not apply it in criminal cases." *United States v. Valdez-Soto*, 31 F.3d 1467, 1476 (9th Cir. 1994); *see Standefer v. United States*, 447 U.S. 10, 21–24 (1980). The district court was free to consider or ignore the prior restitution order.

Finally, Finn's argument that he had a right to have a jury determine the restitution amount is foreclosed by precedent. *See United States v. Green*, 722 F.3d 1146, 1151 (9th Cir. 2013).

**AFFIRMED.**