*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0343P (6th Cir.)
File Name: 01a0343p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 00-3230

CHARLES LAKEETOE WADE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00110—Solomon Oliver, Jr., District Judge.

Argued: August 8, 2001

Decided and Filed: September 26, 2001

Before: SUHRHEINRICH and SILER, Circuit Judges;
HOOD, District Judge.

_____

## COUNSEL

**ARGUED:** Dennis G. Terez, Cleveland, Ohio, for Appellant.
Dean P. Wyman, ASSISTANT UNITED STATES
ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:**

---

\*The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky sitting by designation.

1

Dennis G. Terez, Cleveland, Ohio, for Appellant.  Dean P. Wyman, Christian H. Stickan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

## OPINION

———————————

   JOSEPH M. HOOD, District Judge.  Charles L. Wade appeals his conviction for making false statements for the purpose of influencing a FDIC insured bank in violation of 18 U.S.C. § 1014, possession of counterfeit securities in violation of 18 U.S.C. § 513(a), possession of implements for making counterfeit securities in violation of 18 U.S.C. § 513(b), as well as the district court's sentencing finding of the intended loss under USSG § 2F1.1 and its failure to decrease his sentence under USSG § 2X1.1.  Additionally he appeals his conviction on the grounds that the government committed prosecutorial misconduct by vindictively enlarging the charges he faced in a superseding indictment issued after he refused to plead guilty.  We **AFFIRM** the district court's decision.

### FACTS

   In April 1999, a federal grand jury returned a six-count indictment against Charles L. Wade, then a Youngstown, Ohio resident, charging him with making and possessing counterfeit checks, possession of implements used for making counterfeit checks, and possession of false identification documents.  Wade was arraigned thereafter and a federal public defender was appointed to represent him.  In September, 1999, a federal grand jury returned the twenty-count superseding indictment under which Wade was convicted.

   Wade's check-kiting scheme involved passing checks in the name of fictitious entities, but with account numbers corresponding to accounts of various legal entities.  Some of the checks that Wade passed were printed by New England

*Carboni*, 204 F.3d 39, 47 (2d Cir. 2000) ("Logically, intended loss must include both the amount the victim actually lost and any additional amount that the perpetrator intended the victim to lose."). Thus, the district court's inclusion of the losses attributable to the counterfeit checks that were passed did not result in plain error. *See also United States v. Robbio*, 186 F.3d 37 (5th Cir. 1999); *United States v. Rizzo*, 121 F.3d 794 (1st Cir. 1997); *United States v. Chappell*, 6 F.3d 1095 (5th Cir. 1993).

Turning to Wade's second argument, we determine that the district court erred by failing to examine the factors listed in *Watkins*, when determining the intended loss. However, we find that this does not rise to the level of plain error because it does not seriously affect the fairness, integrity or public reputation of judicial proceedings. *United States v. Barajas-Nunez*, 91 F.3d at 826, 830 (6th Cir. 1996). There is sufficient evidence in the record to support a finding by a preponderance of the evidence that Wade satisfied all three factors of *Watkins*.

The evidence shows that Wade passed additional counterfeit checks after the initial search of his residence and seizure of the blank unsigned checks, and that he also passed counterfeit checks while he was awaiting trial. We believe that this behavior is sufficient evidence of Wade's intent to cause loss, his ability to so cause the loss, and that but for the intervention of the police, Wade would have caused the loss by counterfeiting the blank unsigned checks seized from his residence. *Watkins*, at 1196. Thus, we find that the failure of the district court to apply the *Watkins* analysis does not rise to the level of plain error and we affirm Wade's sentence.

## CONCLUSION

For the reasons expressed herein, the decision of the district court is **AFFIRMED**.

Business Services, Inc. ("NEBS"), a legitimate check printing company. A representative of NEBS testified that several check orders were placed by telephone and mailed to a Youngstown address, including orders for Snapp Corp., Galaxy Productions, and Kaiser Temporary Services. The government produced testimony showing that the Snapps Corp. checks contained the legitimate account number of Snapps Restaurant, Inc., the Galaxy Productions checks had Metropolitan Bank's routing number and the account number of an individual with an account there, and the Kaiser Temporary Services checks contained Key Bank's cashier's check checking account number. Testimony also showed that the scheme also involved the passing of counterfeit checks in the name of Exterra, with a legitimate account number of Exterra Credit Recovery, and Valu Tru Cut, with a legitimate account number of Value City Furniture.

Typically, Wade had others cash the counterfeit checks and would then split the proceeds with them. The government presented the testimony of multiple witnesses who cashed counterfeit checks for Wade. The government also presented testimony showing that Wade used false identification cards, identifying him as Solomon H. Witherspoon, when he applied for checking accounts at Farmers National Bank and Cortland Bank.

In December 1998, the FBI conducted a search of Wade's residence in Youngstown. Agents found personal and business checkbooks, a typewriter, and false identification and social security cards. An Ohio identification card seized had been issued in the name of Solomon H. Witherspoon and contained Wade's picture. The personal checkbooks were for accounts at Farmers National Bank and Cortland Bank in the name of Solomon H. Witherspoon. The signature card for the Farmers Bank account was also found. Agents also found remnants of business checks in the name of Snapps Corporation, blank Galaxy Productions checks, and blank Kaiser Temporary Service checks.

Wade discharged his appointed counsel prior to trial. His appointed counsel did, however, serve an advisory role during trial. After the close of evidence, Wade made an oral motion of acquittal on some of the counts against him. The district court denied the motion on most of the counts and conditionally denied the motion on others. After examining case law concerning the definition of the term "implement" as used in 18 U.S.C. § 513(b), the district court sustained its conditional ruling. The jury returned a guilty verdict. After a sentencing hearing, the district court sentenced Wade on all counts to 122 months incarceration, four years of supervised release, a $2000.00 special assessment ($100 per count on twenty counts), and ordered restitution.

## DISCUSSION

Initially we consider the government's suggestion that this court should apply the concurrent sentencing doctrine and decline to review Wade's challenge to his convictions because a reversal of the challenged counts would not alter Wade's sentence. The concurrent sentencing doctrine allows a court to "exercise its discretion not to review an issue where it is clear that there is no collateral consequence to the defendant and the issue does not otherwise involve a significant question meriting consideration." *United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1993)(*citing Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989)).

The concurrent sentencing doctrine is not applicable to this case because Wade was not sentenced concurrently, and should this Court reverse any of the challenged convictions, Wade's sentence would have to be recalculated. In *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam), the Supreme Court held that the doctrine cannot be applied when the district court assesses a monetary charge on a defendant pursuant to 18 U.S.C. § 3013. Here, the district court imposed a $2000.00 special assessment on the twenty felony counts pursuant to § 3013(a)(2)(A), which requires a $100.00 assessment for felonies committed by individuals. Thus, the

to do so.'" *United States v. Farrow*, 198 F.3d 179, 198 n.18 (6th Cir. 1999)(quoting *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996)). "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *Barajas-Nunez*, 91 F.3d at 830 (citing Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1993)). "Generally, the courts of appeals should exercise their discretion to correct a plain forfeited error that affects substantial rights only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. (quoting *Olano*, 507 U.S. at 736, internal quotation marks omitted).

Wade's argument that the district court erred by including actual loss in its calculation of total intended loss is based upon the following language in Application Note 8 to § 2F1.1: "Consistent with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." He argues that this language instructs the district court to use either the actual or intended loss, and that in his case the district court improperly included the amount of the counterfeit checks actually passed in its intended loss calculation. We disagree.

This court has defined an intended loss "as the loss the defendant subjectively intended to inflict on the victim." *United States v. Moored*, 38 F.3d 1419, 1427 (6th Cir. 1994). Of course Wade subjectively intended to inflict the losses attributable to the counterfeit checks he passed. "'[I]ntent' is really shorthand for a complicated series of inferences all of which are rooted in tangible manifestations of behavior." *Federal Dep. Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1035 (6th Cir. 1991). The evidence presented at trial showed that Wade, sometimes with the help of others, negotiated counterfeit checks. This evidence also showed the total amount attributable to the negotiated counterfeit checks. His subjective intent to inflict losses by passing these counterfeit checks was thus evident. *See United States v.*

interruption by some similar event beyond the defendant's control.

USSG § 2X1.1(b)(1). In *United States v. Watkins*, 994 F.2d 1192 (6th Cir. 1993), this Court discussed the correct way to apply these statutes in determining whether intended loss should be used, and held that:

> [T]hree factors must be present for an amount of loss to be relevant under section 2F1.1. First, as application note 7 instructs, the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for the interruption, all of the acts necessary to bring about the loss.

Id. at 1196.

At sentencing, the district court found that the intended loss was $955,087.49. [JA at 438].[4]   This amount included $772,453.28, which the government estimated by multiplying the average amount of the counterfeit checks passed by the number of blank counterfeit checks (554) discovered at Wade's residence. *Id*. The district court added this amount to the amount of actual loss caused by Wade to determine the total intended loss. This total loss amount required the district court to increase the offense level by eleven. *See* USSG § 2F1.1(b)(1)(L). Wade argues that the loss amount should have been $182,634.00, which corresponds to a seven level increase under § 2F1.1(b)(1)(K).

Wade failed to raise these issues at sentencing. "'Generally, a failure to object at sentencing forfeits any challenge to the sentence on appeal.' We may overlook such a forfeiture to correct a 'plain error,' but we 'are not required

---

[4] Although the sentencing transcript lists $955,847.806 as the loss amount, the district court indicated that it agreed with the probation officer's calculation of the loss amount, which was $955, 087.49.

concurrent sentencing doctrine is unavailable in this case, and we now turn our attention to the issues raised by Wade.

## I. Conviction under 18 U.S.C. § 1014

Whereas Wade did not move for judgment of acquittal on the counts charging violations of 18 U.S.C. § 1014, we will reverse only upon finding plain error resulting in a "manifest miscarriage of justice." *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir. 1989). We apply the following analysis:

> To establish plain error, a defendant must show "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings."

*United States v. Crozier*, Nos. 99-6561/6567/6629, slip op. at 18 (6th Cir. Aug. 2, 2001)(*quoting United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

Wade appeals his conviction for violations of 18 U.S.C. § 1014 under Counts 4 and 5 of the superseding indictment on the grounds that there was insufficient evidence presented at trial to support conviction on these counts. The relevant portion of 18 U.S.C. § 1014 provides:

> § 1014. Loan and credit applications generally; renewals and discounts; crop insurance
> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the . . . [covered financial institutions] . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014. Wade argues that under this statute, prosecutions for "false statements . . . upon any application" to a covered institution are limited to cases in which the defendant seeks to establish a debtor/creditor relationship through an application for a loan or credit. Thus, he argues that his conviction under the § 1014 counts is invalid since he completed checking account applications containing false statements with Farmer's National Bank and Cortland Bank, not applications for loans or credit. He does not dispute that the banks were covered by the statute.

The language of 18 U.S.C. § 1014 is unambiguous and broad. The statute prohibits an individual from "knowingly mak[ing] *any* false statement . . . for the purpose of influencing in *any* way the action of the . . . [covered institutions] . . . upon *any* application." 18 U.S.C. § 1014 (emphasis added). Nowhere in the language of the statute has Congress stated that the statute applies only to applications seeking credit from one of the covered institutions. The statute explicitly states that it applies to "any application." It is a cardinal rule of statutory construction that, "[i]n the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997)(*quoting Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)). Thus, an application to open a checking account at a covered institution falls within the statute.

Furthermore, if we were to interpret 18 U.S.C. § 1014 to include only those transactions seeking to create debtor/creditor relationships, it would impermissibly render other terms of the statute superfluous. *See Bailey v. United States*, 516 U.S. 137, 145 (1995)("Judges should hesitate to treat as surplusage statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense."). The term "any" found in the phrase, "any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan" is an unnecessary term if Congress really intended that

put the government in a position to increase defendant's sentences and that the addition of counts in the superseding indictment was a vindictive exercise of this power. Whereas Wade failed to raise this issue before the district court, this court's review is limited to plain error. *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir.1989).

"To establish vindictive prosecution, a defendant must show that the prosecutor has some personal 'stake' in deterring the defendant's exercise of his constitutional rights, and that the prosecutor's conduct was unreasonable." *United States v. Wells*, 211 F.3d 988, 1001-02 (6th Cir. 2000) (citing *United States v. Branham*, 97 F.3d 835, 849-50 (6th Cir.1996)). As in *Wells*, Wade has not offered, and there is no evidence in the record to suggest that the government's attorney had a stake in Wade's prosecution, or that he acted unreasonably. Additionally, the evidence presented at trial indicated that Wade passed counterfeit checks after the date of the first indictment. The superseding indictment covered this additional conduct. Thus, this claim is without merit.

## V. Sentencing

Wade argues that the district court erred by including the amount of the bad checks that he passed in its calculation of the intended loss under USSG § 2F1.1. He also argues that the district court failed to analyze the intended loss under USSG § 2X1.1(b)(1), pursuant to *United States v. Watkins*, 994 F.2d 1192 (6th Cir. 1993), and that doing so would have resulted in a three-level reduction to his offense level.

When calculating loss under USSG § 2F1.1 the court is directed by Application Note 8 to use the intended loss if it is greater than the actual loss consistent with the provisions of USSG § 2X1.1(b)(1). This section provides:

> If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or

within the meaning of the statute, but instead are counterfeited securities.[3]

We find that "checks" which have not been filled out with the necessary information to negotiate, such as were possessed by Wade, may be "implements" under 18 U.S.C. § 513(b). Under § 513 a check is considered a "security." 18 U.S.C. § 513(c)(3)(A). Although the term check is often used loosely in everyday conversation, a check is "a draft signed by the maker or drawer, drawn on a bank, payable on demand, and unlimited in negotiability" Black's Law Dictionary (7th ed. 1999). Until a check is signed it is just a piece of paper with information on it. *See* UCC § 3-104. Therefore, we find that "checks" without signatures are not securities within the definition of that term under 18 U.S.C. § 513(c)(3). However, they can be implements under § 513(b) because a counterfeiter such as Wade can use an unsigned check combined with a signature to create a counterfeited security, i.e., a check.

## IV. Prosecutorial Misconduct

Wade alleges that the superseding indictment was a result of actual prosecutorial vindictiveness that arose from his refusal to plead guilty. He contends that the increase in the number of counts in the superseding indictment and the insufficiency of the evidence supporting these additional counts proves that actual prosecutorial vindictiveness occurred. He also argues that the Sentencing Guidelines have

---

[3] Although the text of § 513(b) does not include a jurisdictional element requiring that the implement be used to make a counterfeit security of any kind of entity, *see United States Pebworth*, 112 F.3d 168, 169 (4th Cir. 1997), the relevant counts of the superceding indictment charged that Wade possessed an "implement designed for or particularly suited for making counterfeit securities of an organization." [JA at 80-81]. Wade reiterates his argument that since the checks were those of fictitious entities and not of § 513 organizations, the evidence presented on these counts, as charged, was insufficient for the same reason as the counts charging § 513(a) violations, as discussed *supra*. We reject this argument on the same grounds.

the statute should apply only to applications, advances, discounts, purchases, purchase agreements, repurchase agreements, commitments, or loans that establish a debtor/creditor relationship. Moreover, as pointed out by the Seventh Circuit in *United States v. Krilich*, 159 F.3d 1020, 1028 (1998), not all of the financial institutions enumerated within the statute make loans. "If their inclusion in the statute is to have meaning, then § 1014 *must* cover statements that are not designed to influence an extension of credit – indeed, must cover statements that have nothing to do with the payment of money." *Id*. (upholding a conviction under 28 U.S.C. § 1014 based on false statements made to a bank for the purpose of withdrawing funds held in trust and rejecting the defendant's contention that § 1014 was not violated because the withdrawals of trust funds are not lending transactions).

Our position that 18 U.S.C. § 1014 is not limited to applications for loans or credit is supported by the Supreme Court's holding in *United States v. Wells*, 519 U.S. 482 (1997). In *Wells*, the Court determined that materiality of the false statement is not an element under 18 U.S.C. § 1014 on the grounds that nowhere in the text did it state that a material fact must be the subject of the false statement. *Id*. at 490. The *Wells* Court went on to note that Congress chose to use the phrase "any false statement" and not "material false statement" in the statute. *Id*. Likewise, we determine that had Congress intended 18 U.S.C. § 1014 to only apply to applications seeking to establish a debtor/creditor relationship it would have used such terms and not used the word "any" in the statute.

Wade's reliance on *Williams v. United States*, 458 U.S. 279 (1982), is misplaced. *Williams* involved a defendant charged with violating 18 U.S.C. § 1014 when he engaged in a check kiting scheme and deposited checks knowing that the accounts the checks were written on had insufficient funds to cover them. The Supreme Court held that this conduct did not violate 18 U.S.C. § 1014 because a check itself was not a false assertion and therefore could not be a false statement.

*Id*. at 284.  In the current case, Wade does not dispute that he made a false statement in his application to open a checking account at a covered institution.  Just because Wade applied to open checking accounts to further a check kiting scheme does not mean that these applications were not prohibited under 18 U.S.C. § 1014.

Wade's reliance on legislative history is also misplaced. Courts may look to the legislative history of a statute only if the statutory language is unclear.  *United States v. Choice*, 201 F.3d 837, 839 (6th Cir. 2000).  Furthermore, even if we were to accept Wade's assertion that the legislative history of 18 U.S.C. § 1014 indicates that Congress intended the statute to apply to situations seeking to create a debtor/creditor relationship, this does not necessarily preclude the statute from applying to broader relationships.  *Brogan v. United States*, 522 U.S. 398, 403 (1998) ("But it is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy--even assuming that it is possible to identify that evil from something other than the text of the statute itself.").

## II.  Conviction under 18 U.S.C. § 513(a)

Wade appeals his conviction for violations of 18 U.S.C. § 2[1] and § 513 under Counts 16, 17, 18 and 20 of the superceding indictment on the grounds that there was insufficient evidence presented at trial to support conviction on these counts.  In pertinent part, 18 U.S.C. § 513 provides:

> (a) Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of

---

[1]18 U.S.C. § 2 provides as follows:
a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

organizations.  These banks are organizations as defined in 18 U.S.C. § 513, and the government proved that their names were printed upon the counterfeit securities that Wade possessed.  Thus, his argument is without merit.

## III. Conviction under 18 U.S.C. §513(b)

Wade appeals his conviction on Counts 12, 13 and 14 of the superceding indictment on the grounds that there was insufficient evidence presented at trial to show that he possessed an implement for making counterfeit securities in violation of 18 U.S.C. § 513(b).  At the close of evidence, Wade moved for judgment of acquittal on several counts, including Counts 12, 13 and 14.  Thus, our review of the sufficiency of the evidence presented on these counts examines whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  *See United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

Counts 12, 13 and 14 charged Wade with violating 18 U.S.C. § 513(b), which provides:

> Whoever makes, receives, possesses, sells or otherwise transfers an implement designed for or particularly suited for making a counterfeit or forged security with the intent that it be so used shall be punished by a fine under this title or by imprisonment for not more than ten years, or both.

*Id*.  The superceding indictment charged that the implements possessed by Wade in violation of this statute were checkbooks with checks of Galaxy Productions, Snapps Corporation, and Kaiser Temporary Services.  At trial the evidence showed that the "checks" had not been filled out with the necessary information to negotiate them.  Wade argues that these blank, unsigned checks are not implements

*Id.* at 756-57. (citations and quotation marks omitted).

In this case, there was no actual amendment as Wade was indicted on and convicted of counts alleging 18 U.S.C. § 513(a) violations. Even if we assume that a variance between the indictment and the evidence produced at trial occurred,[2] Wade's claims of a constructive amendment fail because he cannot show that any possible variance affected "some substantial right" and thus, rose to the level of a constructive amendment. *Prince*, 214 F.3d at 757. The *Prince* court explained that

> [a] substantial right is affected only when the defendant establishes prejudice in his ability to defend himself or to the overall fairness of the trial.
>    The purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial, notice to the court so that it may determine if the alleged facts are sufficient in law to support a conviction, prevention of further prosecution for the same offense, and finally, of paramount importance, the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence.

*Id.* (citations and quotation marks omitted).

Wade has not attempted to show how he suffered from prejudice, how any of the substantial rights listed in *Prince,* or any other substantial right was affected by the failure of the indictment to list Key Bank or Metropolitan Bank as

---

[2] We find it doubtful that Wade's complaints even rise to the level of a variance. Counts 16, 17, 18 and 20 can be read to simply identify the counterfeit security in question. The checks identified in the indictment listed both the fictitious entities' names and the names of the banks on their face. Thus, the evidence at trial proved that the checks listed in the indictment counts were counterfeit securities of an organization.

an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both.

*Id.* Wade argues that the government failed to present sufficient evidence that he made or possessed a counterfeit security of an "organization." An "organization" under 18 U.S.C. § 513 is defined as:

> a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons which operates in or the activities of which affect interstate or foreign commerce . . . .

18 U.S.C. § 513(c)(4). It is Wade's contention that because the evidence at trial showed that the checks identified in the superceding indictment were checks of fictitious entities, the government failed to prove that the checks were counterfeit securities of an organization as defined by the statute. Because Wade did not move for acquittal on Counts 16, 17, 18 and 20 at trial, we will reverse only upon finding plain error resulting in a "manifest miscarriage of justice." *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir. 1989).

There is no question that fictitious entities are not organizations under 18 U.S.C. § 513. However, we agree with the Fifth Circuit and the Eighth Circuit that "section 513 does not expressly or impliedly state that a document may be the security of only one organization." *See United States v. Jackson*, 155 F.3d 942, 946 (8th Cir. 1998) (holding that the bank on which fraudulent checks were drawn is an organization under 18 U.S.C. § 513); *United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993) (holding that there was sufficient evidence that a counterfeit check from a fictitious entity purporting to be drawn on the fictitious

entity's account at a local bank satisfied the organization requirement of 18 U.S.C. § 513(a) because the check was also a security of the bank which was an organization under the statute). Because the checks in question were checks purported to be written on accounts at Key Bank and Metropolitan Bank, real entities that are organizations under 18 U.S.C. § 513(c)(4), there was sufficient evidence to convict Wade under Counts 16, 17, 18 and 20.

Wade contends that if we uphold his conviction on these Counts on the grounds that the organization element of 18 U.S.C. § 513 is satisfied because the checks were securities of the banks, it would be tantamount to allowing a constructive amendment of the indictment. He argues that the wording of the superceding indictment specifically named Kaiser Temporary Service and Galaxy Productions as the only organizations subject to counterfeit check activities and that the Court may not now uphold his conviction on the grounds that the banks were the organizations without violating his constitutional rights. We disagree.

Counts 16, 17, 18 and 20 of the superceding indictment used similar language in charging Wade with violating 18 U.S.C. § 2 and § 513(a). For example, Counts 16 and 18 charged as follows:

### COUNT 16

The Grand Jury further charges:

On or about November 18, 1998, in the Northern District of Ohio, the defendant, CHARLES WADE, did, with the intent to deceive other persons and organizations, make and possess counterfeit securities of an organization, with intent to deceive and defraud other persons and organizations, to-wit, checks purporting to be Kaiser Temporary Service check #77671 in the amount of $4,500.00, Kaiser Temporary Service check #77702 in the amount of $520.00, and Kaiser Temporary Service check #77631 in the amount of $550.00.

All in violation of Title 18, United States Code, Section 513(a).

### COUNT 18

The Grand Jury further charges:

On or about August 26, 1998, in the Norther District of Ohio, the defendant, CHARLES WADE, aided and abetted by Sharon Queener and Sherry Coleman, not charged herein, did, with intent to deceive other persons and organizations, make and possess counterfeit securities of an organization, with intent to deceive and defraud other persons and organization, to-wit, a check purporting to be Galaxy Production check #5055 in the amount of $4,500.00.

All in violation of Title 18, United States Code, Sections 513(a) and 2.

[J.A. 81-83]. Counts 17 and 20 used analogous language but listed different dates, check numbers and amounts.

As this Court explained in *United States v. Prince*, 214 F.3d 740 (6th Cir. 2000):

We review *de novo* whether there was an amendment or a variance to the indictment.

[A]n amendment involves a change, whether literal or in effect, in the terms of the indictment. In contrast, a variance occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. If a variance infringes too strongly upon the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation, the variance is considered a constructive amendment. A constructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. Both amendments and constructive amendments are considered *per se* prejudicial and warrant reversal. The harmless error test generally applies to variances.