**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 04-4223**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRANKLIN EDWARD WOODS,

Defendant - Appellant.

─────────────

**No. 04-4231**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK WAYNE WOODS,

Defendant - Appellant.

─────────────

**No. 04-4232**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRUCE EDWARD WOODS,

                              Defendant - Appellant.

_____

**No. 07-4331**

_____

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

MARK WAYNE WOODS,

                              Defendant - Appellant.

_____

**No. 07-4395**

_____

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

        versus

BRUCE EDWARD WOODS,

                              Defendant - Appellant.

_____

Appeals from the United States District Court for the Western District of Virginia, at Harrisonburg.  Norman K. Moon, District Judge.  (5:03-cr-30054-nkm)

_____

Argued:  November 2, 2007          Decided:  March 26, 2008

Before WILLIAMS, Chief Judge, and WILKINSON and MICHAEL, Circuit
Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellants.
Thomas Ernest Booth, Criminal Division, Appellate Section, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON
BRIEF:** James G. Connell, III, DEVINE & CONNELL, P.L.C., Fairfax,
Virginia, for Appellant Mark Wayne Woods; Louis Dene, DENE & DENE,
P.C., Abingdon, Virginia, for Appellant Bruce Edward Woods; Robert
Paul Dwoskin, Charlottesville, Virginia, for Appellant Franklin
Edward Woods. John L. Brownlee, United States Attorney, Roanoke,
Virginia; William F. Gould, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia,
for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal involves Mark Wayne Woods, Bruce Edward Woods, and Franklin Edward Woods, who together operated a family drug ring, and who were charged, convicted, and sentenced on numerous counts related to their business. The Woodses raise a variety of challenges to their convictions and sentences, and Bruce Woods also challenges the sentence enhancement to his conviction under 18 U.S.C. § 924(c) (2000) for brandishing a machinegun. For the reasons that follow, we find their claims lack merit and affirm the Woodses' convictions and sentences.

I.

A.

Mark Wayne Woods ("Mark"), his older brother Bruce Edward Woods ("Bruce"), and his father Franklin Edward Woods ("Frank"), sold methamphetamine and marijuana in Augusta Springs, Virginia, from the spring of 2002 until the summer of 2003. Mark led the family drug ring, and Bruce, who himself abused illegal drugs, sold methamphetamine from time to time. Franklin helped the family operation by storing methamphetamine in his trailer, collecting drug money from Mark, and helping customers find Mark when they wanted to purchase drugs.

The Woodses ran their drug ring from three locations: Franklin's trailer, a "green house" located on Franklin's property

4

about six hundred yards from his trailer, and Mark's trailer, which was about eight miles away from Franklin's and within plain view of the Augusta Correctional Center. As part of this drug ring, the Woodses not only exchanged drugs and cash, but they also exchanged drugs and guns.

On June 27, 2002, three Augusta County law enforcement officers went to investigate Mark's trailer after having observed, from their vantage point at the Augusta Correctional Center, approximately sixty small marijuana plants growing in his backyard. Mark was not home, but shortly after the officers arrived, Bruce showed up and ordered the officers to leave Mark's property. The officers seized the marijuana plants and left the property. Later that same day, the officers returned with a search warrant. The officers seized approximately seventy-two grams of methamphetamine, some marijuana, two digital scales, surveillance equipment, and other drug paraphernalia.

On September 26, 2002, the Augusta County and the Staunton County police departments assembled a SWAT team to execute search warrants at Franklin's trailer and at the "green house" on Franklin's property. As the team searched the property, Bruce arrived and resisted the officers' efforts. At one point, Bruce grabbed an officer's machinegun and pointed it at another officer. The officers were able to wrestle the gun away from Bruce and eventually subdued him. The search turned up approximately eighty-

three grams of methamphetamine, some marijuana, plastic baggies, a drug ledger, two sets of scales, and other drug paraphernalia, as well as cash, ammunition, and numerous firearms.

On June 4, 2003, a federal grand jury returned a sixteen-count indictment against the Woodses. The indictment charged Mark, Bruce, and Franklin with conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (2000) and 21 U.S.C. § 846 (2000) (Count One). The indictment also charged Mark with one count of possession of a firearm in furtherance of a drug trafficking crime, specifically, conspiracy to distribute and possess with intent to distribute methamphetamine, 18 U.S.C. § 924(c)(1) (Count Two); four counts of distribution of methamphetamine, 21 U.S.C. § 841(a)(1) (Counts Three, Six, Nine, and Twelve); four counts of possession of a firearm in furtherance of a drug trafficking crime, namely, distribution of methamphetamine, 18 U.S.C. § 924(c)(1) (Counts Four, Seven, Ten, and Thirteen); and four counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (2000) (Counts Five, Eight, Eleven, and Sixteen). The indictment further charged Bruce with one count of possessing and brandishing a firearm, 18 U.S.C. § 924(c)(1) (Count Fourteen), and one count of being an illegal drug user in possession of a firearm that had moved in interstate commerce, 18 U.S.C. § 922(g)(3) (Count Fifteen).

6

On June 5, 2003, Augusta County law enforcement officers arrested the Woodses. On October 27, 2003, a jury trial commenced. Four days later, the jury convicted Mark, Bruce, and Franklin of the conspiracy charged in Count One. The jury convicted Bruce on all counts. The jury convicted Mark on almost all counts, but acquitted him of one of the five § 924(c)(1) counts and one of the four § 841(a)(1) distribution counts, and convicted him of the lesser included offense of simple possession of methamphetamine on the remaining three § 841(a)(1) distribution counts.

Applying the then-mandatory U.S. Sentencing Guidelines, the district court sentenced Franklin to 78 months' imprisonment, Bruce to 171 months' imprisonment, and Mark to 1,128 months' imprisonment. Because Bruce Woods brandished a machinegun, the government sought to enhance his sentence under 18 U.S.C. § 924(c)(1)(B)(ii), which provides for a minimum of 360 months' imprisonment if the firearm possessed under § 924(c) was a machinegun. The district court declined to enhance Bruce's sentence, reasoning that under the Supreme Court's decision in Castillo v. United States, 530 U.S. 120, 126 (2000), the type of firearm used, such as a machinegun, was an element of the § 924(c)(1) offense that had to be submitted to the jury and found beyond a reasonable doubt.

The Woodses appealed both their convictions and sentences, and the government appealed the district court's refusal to apply

7

§ 924(c)(1)(B)(ii)'s machinegun enhancement to Bruce's sentence. On December 19, 2006, prior to oral argument, and on motion of Mark and Bruce Woods, this court remanded the case for resentencing pursuant to United States v. Booker, 543 U.S. 220 (2005).

Applying the now-advisory U.S. Sentencing Guidelines, the district court did not alter Mark's sentence. But it did adjust Bruce's. First, at the resentencing hearing, the government admitted that Bruce's § 922(g)(3) conviction (Count Fifteen) was defective because the government had failed to present sufficient evidence at trial that the machinegun Bruce had brandished had traveled in interstate commerce. Thus, Count Fifteen of the indictment was dismissed as to Bruce Woods. Second, the court applied the enhancement to Bruce's sentence for the § 924(c) conviction (Count Fourteen), noting that its earlier reliance on Castillo was misplaced (since Castillo involved the pre-1998 version of § 924(c)(1)(A), which did not contain separate provisions for the definition of the crime on the one hand and the penalties therefor on the other, while the current version of § 924(c)(1) does). The district court concluded our decision in United States v. Harrison, 272 F.3d 220 (4th Cir. 2001), supported application of the mandatory minimum 360-month term to Bruce's sentence. Accordingly, the district court resentenced Bruce to 360 months' imprisonment for his § 924(c)(1) conviction to run

8

consecutive to a term of 87 months' imprisonment for his § 846 conspiracy conviction (Count One).

Mark and Bruce timely appealed.

## II.

Both Mark and Bruce Woods contend that errors in the district court's jury instructions in regard to their § 924(c) convictions constructively amended the indictment. No constructive amendment objection to the jury instructions was raised at trial. The district judge was therefore never alerted to the error of which appellants now so vigorously complain.

A constructive amendment violates a defendant's Fifth Amendment right to a trial on a charge issued by the grand jury. United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). Under this court's precedent, constructive amendment is error per se that must be corrected on appeal, even though no constructive amendment objection to the jury instructions was raised at trial. United States v. Floresca, 38 F.3d 706, 711 (4th Cir. 1994) (en banc); see also United States v. Foster, 507 F.3d 233, 242 (4th Cir. 2007). However, in our judgment, no constructive amendment of the indictment occurred.

### A.

"A constructive amendment to an indictment occurs when . . . the court (usually through its instructions to the jury) . . .

9

broadens the possible bases for conviction beyond those presented by the grand jury." Floresca, 38 F.3d at 710. Constructive amendments are considered fatal variances "because the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." Randall, 171 F.3d at 203. The Woodses contend that the jury instructions below broadened the possible bases for conviction by cross-matching portions of what they contend are the two distinct offenses contained in § 924(c)(1)(A).

We turn first to the Woodses' claim that § 924(c) creates two distinct offenses: the first criminalizing the use or carrying of a firearm during and in relation to a drug trafficking crime or a crime of violence, and the second criminalizing the possession of a firearm in furtherance of a drug trafficking crime or a crime of violence. In order to evaluate this claim, we must first examine the language of § 924(c), which states:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A).

10

This court has not yet decided whether § 924(c) creates more than one offense. The test for determining whether statutory provisions create distinct offenses is "whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). The two prongs of § 924(c) not only prohibit different types of conduct (use and carry versus possession), but they also diverge in how strong the nexus between the firearm and the predicate drug trafficking crime or crime of violence must be: a firearm must be used or carried only "during and in relation to" a predicate crime, but a firearm must be possessed "in furtherance of" such a crime. Therefore, we agree with the conclusion -- reached by the Sixth, Eighth, and Tenth Circuits -- that § 924(c) indeed creates distinct "use and carry" and "possession" offenses. See United States v. Gamboa, 439 F.3d 796, 810 (8th Cir. 2006); United States v. Brooks, 438 F.3d 1231, 1237 (10th Cir. 2006); United States v. Combs, 369 F.3d 925, 933 (6th Cir. 2004). If the Woodses' were indicted for one § 924(c) offense but convicted on the other, this would of course mandate reversal under our precedent. Floresca, 38 F.3d at 710.

B.

The fact that § 924(c) creates two distinct offenses, however, does not answer the question of whether the jury instructions here constituted a constructive amendment to the indictment. This court has made clear that when the evidence at trial or the court's

11

instructions to the jury differ from what was charged in the indictment but do not broaden the bases for conviction, a mere variance has occurred, which does not fall within the ambit of Floresca's per se rule. Randall, 171 F.3d at 203. Other circuits, in determining whether jury instruction errors constitute constructive amendments or mere variances, have held that only when there is a "substantial likelihood" that the defendant may have been convicted of an uncharged offense can it be said that a constructive amendment has occurred. See United States v. Avery, 295 F.3d 1158, 1176-77 (10th Cir. 2002); United States v. Wade, 266 F.3d 574, 584 (6th Cir. 2001).

As an initial matter, we acknowledge that there were errors in the jury instructions. The indictment charged Mark and Bruce with "knowingly possess[ing] a firearm in furtherance of a drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The district court, however, instructed the jury at certain points that it could convict Mark and Bruce not just if it found that they had "possessed" a firearm, but if they had "used" or "carried" a firearm. Also, at certain points in the instructions, the court cross-matched the "during and in relation to" provision of § 924(c) (while also misstating that provision in the disjunctive as "during or in relation to") with the "in furtherance of" provision of § 924(c).

While these jury instructions undoubtedly created variances at trial, we do not believe that those variances rise to the level of constructive amendment. To begin, the Woodses raised no constructive amendment objection to the jury instructions at trial, which suggests that they did not regard the instructions as so egregious as to result in conviction on a crime not set forth in the indictment. Putting that aside, however, and viewing the jury instructions as a whole, we do not believe the errors here caused the jury to convict the Woodses on an uncharged offense. See Floresca, 38 F.3d at 710. Certainly there was no "substantial likelihood" of the jury convicting on an uncharged offense. See, e.g., Avery, 295 F.3d at 1177; Wade, 266 F.3d at 584.

First, the addition of the terms "use" and "carry" to the recitation of the indicted offense did not broaden the indictment. One who uses or carries a firearm must necessarily be found to possess it. See, e.g., Gamboa, 439 F.3d at 810 ("[I]mplicit in a finding that [a defendant] 'used and carried' firearms lies a finding that [the defendant] simultaneously 'possessed' the firearms . . . ."). Therefore, the addition of those terms created little risk that the Woodses were convicted without the government proving the necessary elements of the charged crime of possession.

Second, despite the substitution at certain points of the "during or in relation to" language for the "in furtherance" language, the jury instructions on the whole make clear that, to

13

reach a guilty verdict on the § 924(c) offenses, the jury had to find that a firearm was possessed "in furtherance of" a drug trafficking crime. To begin, the district judge used the correct "in furtherance of" language when it read each and every one of the challenged counts to the jury. JA 741 (setting forth Count Two); JA 742 (setting forth Counts Four and Seven); JA 743 (setting forth Counts Ten and Fourteen). After setting forth the counts, the district judge then used that same correct language when reciting § 924(c)(1)(A) to the jury. JA 744.

Moreover, the "in furtherance language" was clearly set forth in six of the written jury instructions pertaining to the possession of a firearm offense. See Jury Instruction 23, (regarding Count Ten), JA 872; Jury Instruction 24 (regarding Count Thirteen), JA 873; Jury Instruction 20 (regarding Count Two), JA 933; Jury Instruction 21 (regarding Count Four), JA 934; Jury Instruction 25 (regarding Count Fourteen), JA 935; Jury Instruction 26 (providing the jury with the relevant portion of § 924(c)(1)(A)), JA 936. In fact, the "during or in relation to" substitution was only made in a single written jury instruction, Instruction Number 27. JA 880. Beyond that, the "in furtherance language" was also clearly set forth, in bold, on each of the relevant verdict forms. JA 941 (Counts Two and Four); JA 942 (Count Seven); JA 943 (Count Ten); JA 938 (Count Fourteen). None

14

of the verdict forms used the incorrect "during or in relation to" language.

In addition, both the prosecutor and the defense attorney for Bruce Woods recited the correct "in furtherance language" language multiple times in their closing arguments to the jury. See JA 798-98 (the government states, four times, that the § 924(c) offenses involve "the . . . possession of a firearm in furtherance of . . . ."); JA 800 (the government states, in reference to Count Fourteen, that the evidence establishes "the possession of a firearm in furtherance of . . . ."); JA 801 (the government states "that [Count Fourteen] is the possession in furtherance . . . ."); JA 834 (Bruce Woods' defense attorney states that "[t]he question that you have to address here also is whether, if you believe that there was control of the gun, do you next believe that the control of the gun, that the possession of the gun was in furtherance of a drug conspiracy?"); JA 837 (Bruce Woods' defense attorney tells the jury to "[a]sk . . . how the possession of Sergeant Salemi's rifle in any way facilitated the carrying out of a felony.")

Finally, any mistake made by the district judge in employing the "during or in relation to" language did not broaden the indictment because the district judge defined those terms in such a way as to impose the more stringent standard carried by the term "in furtherance of." In particular, at the point in his oral instructions where the district judge made his cross-matching

15

errors, he stated that "[a] firearm can be used in relation to a felony involving drug trafficking if . . . [f]or example, [the firearm's] presence in [the defendant's] possession in any manner <u>facilitated</u> the carrying out of the felony." JA 747 (emphasis added). One sentence later, the district judge cited "[t]he collection of drug monies owed a Defendant" as "acts <u>in furtherance of a</u> [drug trafficking crime]." <u>Id.</u> (emphasis added). The district judge provided substantively correct definitions in the written instructions as well. Instruction 29, JA 883 (defining "used or carried" as "appl[ying] to any use or carrying of a gun that <u>facilitates</u>, in any manner, the commission of a drug offense") (emphasis added); Instruction 31, JA 885 (instructing that "[t]he defendant is considered to have used a firearm if its presence in his possession in any manner <u>facilitated</u> the carrying out of the felony") (emphasis added).

Thus, even though the district judge at certain points did use the incorrect statutory terms, the instructional errors here did not rise to the level of a constructive amendment. <u>See</u> <u>Randall</u>, 171 F.3d at 203. Therefore, we reject the Woodses' contention that we must reverse their convictions on this ground.[1]

---

[1]The Woodses also contend that the district judge, through his instructions, constructively amended the indictment by expanding the predicate "drug trafficking crime" offense for § 924(c) from distribution to possession with intent to distribute. This claim also lacks merit. First, the district judge properly instructed the jury that the relevant "drug trafficking crime" for purposes of a finding of guilt on the relevant § 924(c) counts was

16

III.

In addition to the constructive amendment challenge, raised by both Mark and Bruce Woods, Mark Woods raises additional challenges to his § 924(c) convictions. He claims first, that there was insufficient evidence to support his convictions under Counts Four, Seven, and Ten (because he only "passively received" firearms as payment for drugs); and second, that his convictions under those same counts cannot stand because he was not convicted of the predicate offense of distribution of methamphetamine, but rather of the lesser included offense of simple possession of methamphetamine. We address each argument in turn.

A.

Mark Woods contends that there is insufficient evidence to support his convictions in Counts Four, Seven, and Ten for possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c). His argument rests primarily on the contention that he did not, as a matter of law, "use" a firearm in furtherance of a drug trafficking crime. See Bailey v. United States, 516 U.S. 137, 148-49 (1995). Rather than "use" firearms in his drug trade,

---

"distribution of methamphetamine." JA 745-46. Second, the district judge properly instructed the jury on the elements of distribution. JA 749, 888-93. Finally, while the Woodses are correct that the district judge also issued an instruction on the crime of possession with intent to distribute, that instruction was appropriate insofar as conspiracy to commit that offense was charged in Count One and charged as a predicate offense in Counts Two and Fourteen.

17

Mark contends that he only "passively received" firearms as payment for drugs. The Supreme Court recently recognized that while the trading of guns for drugs constitutes "use" for purposes of § 924(c), the mere receipt of firearms for drugs does not. <u>Watson v. United States</u>, 128 S. Ct. 579, 583-86 (2007).

However, whether Mark "used" firearms in his drugs-for-guns business is irrelevant here, because Mark was not charged with "use" of a firearm, but rather with "possession" of a firearm. Even if Mark only traded drugs for guns, he obviously "possessed" firearms, under any meaning of that term, when he obtained them in the course of his drugs-for-guns business. <u>See</u> <u>United States v. Rusher</u>, 966 F.2d 868, 878 (4th Cir. 1992) (making clear that possession can be actual or constructive).

As discussed above, the district judge instructed the jury not only on the term "possession" under § 924(c), but also on the terms "use" and "carry" under § 924(c), and this error, as to which there was again no objection, is perhaps what now spurs Mark Woods' argument on appeal. Nonetheless, as we have explained, there was no constructive amendment to the indictment, and therefore Mark was indicted, convicted, and sentenced for <u>possession</u> of a firearm. The fact that Mark possessed a firearm in furtherance of his drug business was more than adequately proven. Curtis Jackson testified that he traded firearms to Mark for drugs, and that testimony was buttressed by the seizure of those same firearms from the "green

18

house."  Therefore, we reject Mark's claim that there was insufficient evidence to support  his § 924(c) convictions for "possession of a firearm."

B.

Mark also contends  that  his convictions under § 924(c) for Counts Four, Seven, and Ten cannot stand because the jury did not convict him of the predicate offense of distribution of methamphetamine charged in Counts Three, Six, and Nine, but rather convicted him of the lesser included offense of simple possession. Mark argues that because proof of a predicate offense is an essential element of a § 924(c) violation, see Randall, 171 F.3d at 205-06, and because the government specified a particular predicate offense in the indictment -- distribution -- he cannot be convicted under § 924(c) unless convicted of that predicate offense.

This court has recognized that a defendant's conviction under § 924(c) "does not depend on his being convicted -- either previously or contemporaneously -- of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt."  E.g., United States v. Crump, 120 F.3d 462, 466 (4th Cir. 1997); see also United States v. Hopkins, 310 F.3d 145, 152-53 (4th Cir. 2002).  Here, the jury was specifically instructed on distribution in violation of 21 U.S.C. § 841(a)(1) as the predicate offense, and the evidence was more than sufficient for the jury to find beyond a reasonable doubt that Mark distributed

19

methamphetamine.  Indeed, both Curtis Jackson and Allen Keyser --
two of Mark's customers -- testified that they purchased
methamphetamine from Mark within or about June 2002.

Moreover, the Supreme Court has made clear that "inconsistent
verdicts -- even verdicts that acquit on the substantive offense --
should not necessarily be interpreted as a windfall to the
Government at the defendant's expense." United States v. Powell,
469 U.S. 57, 64 (1984).  The Court stated that it is just as likely
that "the jury, convinced of guilt, properly reached its conclusion
on the compound offense, and then through mistake, compromise, or
lenity, arrived at an inconsistent conclusion on the lesser
offense."  Id.  Accordingly, seemingly inconsistent conclusions
should not be set aside unless the evidence is insufficient to
"support any rational determination of guilty beyond a reasonable
doubt."  Id. at 67.  Again, there was ample evidence in this case
that Mark committed the specified predicate offense, distribution
of methamphetamine.  Thus his convictions under § 924(c) stand.[2]

_____

[2]We also find without merit Mark's additional contention that
his § 924(c) convictions cannot stand because Count Two is
multiplicitous with Counts Four, Seven, and Ten.  Specifically,
Mark argues that the jury "could easily have based its verdict in
Count Two on the same firearm or firearms for which it convicted
Mark in Counts Four, Seven, and Ten . . . ."  To begin, this court
has made clear that multiple acts over the course of a single
continuing offense, even when involving the same firearm, will
support multiple § 924(c) convictions.  United States v. Camps, 32
F.3d 102, 107 (4th Cir. 1994).  Moreover, Count Two was temporally
broader than Counts Four, Seven, and Ten, and thus did not
necessarily involve the same firearms or even the same drug
offenses as Counts Four, Seven, and Ten.  Further, testimony

20

IV.

We have reviewed the Woodses' remaining claims with care, and we find that they lack merit. In particular, Mark's contention that it was not established that he had been "convicted in any court of a crime punishable by imprisonment for a term exceeding one year" for purposes of 18 U.S.C. § 922(g) is unpersuasive, given that he stipulated to that very element at trial. See United States v. Clark, 993 F.2d 402, 405-06 (4th Cir. 1993) (holding that an identical stipulation constituted a waiver of that element of § 922(g)). Moreover, we reject Bruce's claim that the district court should not have imposed the 360-month sentence enhancement to his § 924(c) conviction because, as this circuit and others have recognized, the firearms characteristics provisions set out in § 924(c)(1)(B) are sentencing factors to be determined by the court. See, e.g., Harrison, 272 F.3d at 225-226; see also Harris v. United States, 536 U.S. 545, 552 (2002).

Therefore, we uphold the Woodses' convictions and sentences. The judgment of the district court is

AFFIRMED.

---

presented to the grand jury, evidence presented at trial, and the prosecutor's closing argument made clear that Count Two involved a firearm that Mark had sold to a man named John Sorrells in exchange for methamphetamine, and that Counts Four, Seven, and Ten involved four firearms that Mark accepted as payment for methamphetamine from one of his regular customers, Curtis Jackson, in June of 2002. Finally, the jury was instructed that Counts Four, Seven, and Ten involved the Jackson firearms, but not that Count Two involved those firearms. Thus, we reject Mark's multiplicity argument.

21