SHEDD, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority’s decision to affirm Elswick’s convictions for possession with intent to distribute, and distribution of, methamphetamine (Count 1) and possession of a firearm by a convicted felon (Count 2), and its conclusion that Elswick’s conviction under 18 U.S.C. § 924(c) (Count 3) cannot stand insofar as it is premised on the “use” prong of the statute in light of Watson v. United States, — U.S. —, 128 S.Ct. 579, 169 L.Ed.2d 472 (2007). However, Elswick was also indicted and convicted in Count 3 under the separate § 924(c) prong that criminalizes the possession of a firearm in furtherance of a drug trafficking crime. The majority holds that the evidence is insufficient to sustain that conviction because no rational *15 trier of fact could conclude beyond a reasonable doubt that Elswick possessed a firearm in furtherance of a drug trafficking crime. I disagree with this holding.[1]
Viewed in the light most favorable to the government, see Evans v. United States, 504 U.S. 255, 257, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992), the evidence is clearly sufficient to support a reasonable determination that Elswick possessed the firearm in furtherance of a drug trafficking crime. Specifically, the government presented evidence that Eric Woods stole his father’s firearm and enlisted the help of his friend Terry Looney to use it to get drugs. J.A. 22-28. Looney told Woods that he knew where they could trade the firearm for drugs, and he took Woods to a house in an area known as “Dry Fork” and told him that Elswick was the person there who could give them drugs for the firearm. JA. 22-23. Looney then went inside the house with the firearm. J.A. 24. When Looney returned, he told Woods that they needed to go to a Dry Fork store and wait. J.A. 24. Within 15-20 minutes, Elswick arrived at the store and delivered drugs to Looney. J.A. 24-25. Elswick later contacted Woods’ father and returned the firearm to him. J.A. 38-40. Importantly, Elswiek subsequently admitted in a sworn statement that he had obtained the firearm from “two boys” for $50 at a Dry Fork store. J.A. 134. However, Elswiek testified at trial that he had lied about obtaining the firearm in his sworn statement. JA. 84, 90-91.
By convicting Elswick of Count 1, the jury credited Woods’ testimony (and disbelieved Elswick) that Elswick delivered the methamphetamine at the convenience store.[2] Based on Elswick’s admission that he obtained the firearm from “two boys” at a Dry Fork convenience store, as well as the evidence establishing that Elswick returned the firearm to Woods’ father, the jury also could have reasonably found (consistent with Woods’ general testimony) that Looney delivered the firearm to Elswick immediately before the drug transaction. This set of circumstances, properly viewed “as a coordinated and interrelated whole,” United States v. Hughes, 716 F.2d 234, 240 (4th Cir.1983), is sufficient to establish that Elswick re *16 ceived the firearm in payment for the methamphetamine and thereby possessed the firearm in furtherance of the drug trafficking crime charged in Count 1. See United States v. Lomax, 293 F.3d 701, 705 (4th Cir.2002) (holding that § 924(c) “requires the government to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime ... [and] whether the firearm served such a purpose is ultimately a factual question”); see also United States v. Woods, 271 Fed.Appx. 338, 346 (4th Cir.2008) (holding in light of Watson that a defendant who traded drugs for firearms “obviously ‘possessed’ firearms, under any meaning of that term, when he obtained them in the course of his drugs-for-guns business”).
Based on the foregoing, I concur in Parts II-A and II-B of the majority opinion, but I dissent from Part II-C.

. Watson is the only basis which Elswick argued in his brief for reversal on Count 3. See Brief of Appellant, at 29 (Count 3 section title: “Whether Trading Drugs For A Gun Constitutes The Use Of A Firearm ‘During And In Relation To ... [A] Drug Trafficking Crime’ Within The Meaning of 18 U.S.C. § 924(c)(1).”). I therefore question whether we should review the evidentiary sufficiency on Count 3 as it pertains to the possession prong. See United States v. Al-Hamdi, 356 F.3d 564, 571 n. 8 (4th Cir.2004) (noting the “well settled rule that contentions not raised in the argument section of the opening brief are abandoned"). Moreover, it does not appear that Elswiek challenged the sufficiency of the evidence below under Federal Rules of Criminal Procedure 29. Accordingly, to the extent that we should review this claim at all, our review should only be for plain error. See United States v. Wallace, 515 F.3d 327, 331-32 (4th Cir.2008).

. The jury obviously disbelieved much of Elswick’s testimony because he not only denied delivering the methamphetamine to Looney and Woods, but he also denied (contrary to the verdict on Count 2) ever possessing the firearm. I note that the difference between Elswick’s pretrial version of events (i.e., he bought the firearm for $50) and Woods’ testimony (i.e., Looney traded the firearm for drugs) is immaterial because the jury could have believed that Elswick received the firearm from Looney and Woods and disbelieved that the exchange was for cash rather than drugs. See United States v. Pruneda-Gonzalez, 953 F.2d 190, 196 n. 9 (5th Cir.1992) (“Not only is a jury free to choose among reasonable constructions of the evidence, it is afforded the latitude to choose to believe part of what a witness says without believing all of that witness’s testimony.” (citations and internal punctuation omitted)).